UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(ORANGEBURG DIVISION)

| | | |
|---|---|---|
| MALLOREY TOMCZAK, LUIS RIVERA-SOLIS, KALITHA HEAD, JOSEPHINE WALKER, AND LESLIE WYATT, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 5:21-cv-01564-MGL |
| | ) | |
| Plaintiff, | ) ) | **PLAINTIFFS' OPPOSITION TO** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| v. | ) | **CLASS ALLEGATIONS AND COUNT VII** |
| | ) | **OF AMENDED COMPLAINT** |
| UNITED SERVICES AUTOMOBILE | ) | |
| ASSOCIATION, USAA CASUALTY | ) | |
| INSURANCE COMPANY, USAA | ) | |
| GENERAL INDEMNITY COMPANY, AND | ) | |
| GARRISON PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Respondent. | ) | |
| | ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ............................................................................... 1

ARGUMENT ...................................................................................... 4

I.     The Fourth Circuit Holding in *Cent. Wesleyan* that Only the Residency of the Named Plaintiff Is Considered in Applying the Door-Closing Statute to a National Class Action Applies Equally to Determining Capacity. ..................... 4

II.    Under the Rules Enabling Act, Rule 23 and Rule 17 Trump the Door-Closing Statute; Thus, the Statute Does Not Prohibit Plaintiffs from Representing a Nationwide Class. ........................................................ 5

     A.    The *Erie* Decision Interpreting the Rules of Decision Act, and Supreme Court Decisions Attempting to Fashion a Test for Applying the *Erie* Doctrine. ....................................................... 6

     B.    *Hanna's* Inquiry under the Rules Enabling Act in Determining Whether a Federal Rule of Civil Procedure Applies Over a Conflicting State Law. ............................................................ 7

     C.    The Fourth Circuit's Decision in *Szantay* Employing a Rules of Decision Act Analysis in Deciding Whether to Apply the Door-Closing Statute. ......................................................... 8

     D.    Following *Szantay*, Federal Courts Have Applied Only a Rules of Decision Act Analysis, and Not an Enabling Act Analysis, in Applying the Door-Closing Statute. ............................................ 9

     E.    The Supreme Court's Decision in *Shady Grove* Describing the Two-Step Framework under the Enabling Act. ........................................ 13

     F.    The Fourth Circuit Has Adopted Justice Scalia's Plurality Opinion in *Shady Grove*. ............................................................ 14

     G.    Both Rule 23 Governing Membership in Class Actions, and Rule 17 Governing Capacity, Trump the Door-Closing Statute under Either Justice Scalia's Opinion in *Shady Grove* or Justice Stevens' Concurring Opinion. ................................................... 15

          1.    Applying Justice Scalia's opinion in *Shady Grove*, Rule 23 and Rule 17 trump the Door-Closing Statute, thus allowing Plaintiffs to represent a national class in federal court. ............... 16

               a.    The Door-Closing Statute conflicts with Rule 23. ............ 16

b.    The Door-Closing Statute conflicts with Rule 17(b)(1). .............................................................. 17

c.    Neither Rule 23 nor Rule 17 exceed statutory authorization or Congress's rulemaking power. .............. 18

i.    Rule 23 is procedural in nature and does not violate the Rules Enabling Act. ........................... 18

ii.    Rule 17(b)(1) is procedural in nature and does not violate the Rules Enabling Act. .............. 19

2.    Applying Justice Stevens' concurring opinion in *Shady Grove*, Rule 23 and Rule 17 trump the Door-Closing Statute, thus allowing Plaintiffs to represent a national class in federal court. ........................... 21

III.    The Court Has Personal Jurisdiction Over Defendants with Respect to the Claims of Nonresident Putative Class Members. ................................. 26

IV.    Plaintiffs Have Article III Standing to Assert Nationwide Class Claims. ............ 29

V.    Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy. ............................. 31

CONCLUSION ................................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ...................................................................... 14

*Amato v. Subaru of Am., Inc.*,
    No. 18-16118, 2021 WL 2154976 (D.N.J. May 27, 2021) ............................................. 18

*Angel v. Bullington*,
    330 U.S. 183 (1947) ........................................................................ 5, 6, 7, 22

*Boger v. Citrix Sys., Inc.*,
    No. 8:19-cv-01234-PX, 2020 WL 1033566 (D. Md. Mar. 3, 2020) ............................... 27

*Boisvert v. Techtronic Indus. N. Am., Inc.*,
    56 F. Supp. 3d 750 (D.S.C. 2014) ................................................................... 12

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012) ..................................................................... 30

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*,
    137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017) ............................................... 3, 4, 26

*Bumgarder v. Keene Corp.*,
    593 F.2d 572 (4th Cir. 1979) ...................................................................... 9, 10

*Burlington N. R.R. Co.*,
    480 U.S. 1, 6, 107 S.Ct. 967 (1987) .................................................................. 14

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*,
    356 U.S. 525 (1958) ....................................................................................... 7

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
    143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993) .................................. 17

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
    6 F.3d 177 (4th Cir. 1993) .................................................................... *passim*

*Criteo SA v. Unique USA, Inc.*,
    No. 0:18-cv-02889-JMC, 2019 WL 3252958 (D.S.C. July 19, 2019) ............................ 22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................. 23, 28

*Domino Media, Inc. v. Kranis*,
  9 F. Supp. 2d 374 (S.D.N.Y. 1998),
  *aff'd*, 173 F.3d 843 (2d Cir. 1999) .................................................................. 20

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................... *passim*

*Farmer v. Monsanto Corp.*,
  353 S.C. 553, 579 S.E.2d 325 (2003) ....................................................... *passim*

*Fejzulai v. Sam's W., Inc.*,
  205 F. Supp. 3d 723 (D.S.C. 2016) ................................................................. 24

*Freeman v. MAM USA Corp.*,
  No. 1:20-cv-01834, 2021 WL 1103350 (N.D. Ill. Mar. 23, 2021) .................... 31

*Gallivan v. United States*,
  943 F.3d 291 (6th Cir. 2019) ................................................................... 15, 24

*Guar. Tr. Co. of N.Y. v. York*,
  326 U.S. 99 (1945) ................................................................................. 5, 6, 8

*Hager v. Omnicare, Inc.*,
  No. 5:19-cv-00484, 2020 WL 5806627 (S.D.W. Va. Sept. 29, 2020) .............. 27

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ................................................................................... *passim*

*Hart v. Navy Fed. Credit Union*,
  No. 2:21-44-RMG, 2021 WL 2418459 (D.S.C. June 11, 2021) ................... 12, 24

*Hassan v. Lenovo (United States), Inc.*,
  No. 5:18-CV-105-BO, 2019 WL 123002 (E.D.N.C. Jan. 7, 2019) .................... 30

*Hatchett v. Henry Schein, Inc.*,
  No. 3:19-CV-83-NJR, 2020 WL 733834 (S.D. Ill. Feb. 13, 2020) .................... 25

*Huskey v. Colgate-Palmolive Co.*,
  486 F. Supp. 3d 1339 (E.D. Mo. 2020) ............................................................ 27

*Hutton v. Nat'l Board of Examiners in Optometry, Inc.*,
  892 F.3d 613 (4th Cir. 2018) .......................................................................... 31

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) ..................................................................... 30

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  362 F. Supp. 3d 510 (N.D. Ill. 2019) ............................................................... 25

iv

*In re Dicamba Herbicides Litig.*,
    359 F. Supp. 3d 711 (E.D. Mo. 2019) ............................................................................ 27

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011) ............................................................................ 31

*In re Interior Molded Doors Antitrust Litig.*,
    No. 3:18-cv-00718-JAG, 2019 WL 4478734 (E.D. Va. Sept. 18, 2019) ........................ 30

*In re Jones*,
    618 B.R. 757 (Bankr. D.S.C. 2020) .......................................................................... 24, 25

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*,
    No. 2:12-CV-01297-DCN, 2012 WL 5384922 (D.S.C. Nov. 1, 2012) ........................... 31

*In re Trilegiant Corp., Inc.*,
    11 F. Supp. 3d 82 (D. Conn. 2014),
    *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ................ 18

*James v. Pratt & Whitney*,
    126 F. App'x 607 (4th Cir. 2005) .................................................................................. 32

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*,
    No. 14-cv-1223, 2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) ...................................... 20

*Jones v. Depuy Synthes Prods., Inc.*,
    330 F.R.D. 298 (N.D. Ala. 2018) .................................................................................. 28

*Kanouse v. Westwood Obstetrical & Gynecological Assocs.*,
    505 F. Supp. 129 (D.N.J. 1981) ...................................................................................... 8

*Lessin v. Ford Motor Co.*,
    No. 3:19-cv-01082-AJB-AHG, 2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) .............. 25

*Lyngaas v. Ag*,
    992 F.3d 412 (6th Cir. 2021) ................................................................................... 26, 28

*McCrief v. Wachovia Bank*,
    No. 2:12-CV-72-RMG-BHH, 2013 WL 841527 (D.S.C. Feb. 12, 2013),
    *report and recommendation adopted*, No. 2:12-72-RMO, 2013 WL 841570
    (D.S.C. Mar. 6, 2013) .................................................................................................... 33

*McKenzie v. Haw. Permanente Med. Grp., Inc.*,
    29 F. Supp. 2d 1174 (D. Haw. 1998) ............................................................................. 20

*Molock v. Whole Foods Mkt. Grp., Inc.*,
    952 F.3d 293 (D.C. Cir. 2020) ...................................................................................... 28

*Mussat v. IQVIA*,
  953 F.3d 441 (7th Cir. 2020),
  *cert. denied*, 141 S. Ct. 1126 (2021) ...................................................... 27, 28

*N. Tr. Co. v. Bunge Corp.*,
  899 F.2d 591 (7th Cir. 1990) ......................................................................... 17

*Paradis v. Charleston Cty. Sch. Dist.*,
  433 S.C. 562, 861 S.E.2d 774 (2021),
  *reh'g denied* (Aug. 18, 2021) ...................................................................... 30

*Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech., LLC*,
  325 F.R.D. 570 (E.D. La. 2016)..................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)........................................................................................ 28

*Pledger v. Lynch*,
  5 F.4th 511 (4th Cir. 2021) ....................................................... 2, 14, 15, 24

*Proctor & Schwartz, Inc. v. Rollins*,
  634 F.2d 738 (4th Cir. 1980) ......................................................... 9, 10, 12, 24

*Progressive Health & Rehab Corp. v. Medcare Staffing, Inc.*,
  No. 2:19-CV-4710, 2020 WL 3050185 (S.D. Ohio June 8, 2020)................... 27

*Rauch v. Richland-Lexington Sch. Dist. 5*,
  No. 3:10-1154-MJP-PJG, 2010 WL 3950729 (D.S.C. Sept. 16, 2010),
  *report and recommendation adopted*, No. 10-1154, 2010 WL 3952024 (D.S.C.
  Oct. 6, 2010) ................................................................................................. 33

*Rios v. State Farm Fire & Cas. Co.*,
  469 F. Supp. 2d 727 (S.D. Iowa 2007) ......................................................... 30

*Rosenthal v. Unarco Indus., Inc.*,
  278 S.C. 420, 297 S.E.2d 638 (1982) .......................................................... 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)........................................................................... *passim*

*Shields v. United States*,
  436 F. Supp. 3d 540 (D. Conn. 2020).................................................... 15, 16

*Snyder v. Harris*,
  394 U.S. 332 (1969)........................................................................................ 17

*Spelman v. Bayer Corp.*,
  No. 7:10-cv-00091-JMC, 2011 WL 13312222 (D.S.C. Feb. 22, 2011) ........... 11

*Stalvey v. Am. Bank Holding, Inc.*,
　　No. 4:13-cv-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013)........................................... 24

*Stewart v. Dunham*,
　　115 U.S. 61 (1885) ......................................................................................................... 18

*Szantay v. Beech Aircraft Corp.*,
　　349 F.2d 60 (4th Cir. 1965) .................................................................................. *passim*

*TransUnion LLC v. Ramirez*,
　　141 S. Ct. 2190 (2021) .................................................................................................... 29

*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*,
　　463 F. Supp. 2d 544 (D.S.C. 2006) ................................................................ 5, 10, 11, 20

*Walker v. Armco Steel Corp.*,
　　446 U.S. 740 (1980) .......................................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) ........................................................................................................ 28

*Ward v. Dixie Nat. Life Ins. Co.*,
　　257 F. App'x 620 (4th Cir. 2007) .................................................................................. 11

*Woods v. Interstate Realty Co.*,
　　337 U.S. 535 (1949) ................................................................................................ *passim*

## Statutes

28 U.S.C. § 1332 ...................................................................................................................... 27

28 U.S.C. § 1652 .............................................................................................................. *passim*

28 U.S.C. § 2017 ...................................................................................................................... 13

28 U.S.C. § 2072 .............................................................................................................. *passim*

28 U.S.C. § 2072(b) ......................................................................................................... 7, 18, 25

28 U.S.C. §1332(d) ................................................................................................................. 17

S.C. Code § 12-60-80(C) .................................................................................................. 24, 25

S.C. Code Ann. § 15-5-150 .............................................................................................. *passim*

## Other Authorities

Laura E. Little,
　　*Out of Woods and Into the Rules: The Relationship Between State Foreign*

*Corporation Door–Closing Statutes and Federal Rule of Civil Procedure 17(b)*,
72 Va. L.Rev. 767 (1986) ................................................................. 21

Note, *Federal Courts: Effect of State Statute on Jurisdiction of Federal Courts*,
24 IND.L.J. 418 (1949)..................................................................... 23

**Rules**

Fed. R. Civ. P. 17 .............................................................. 2, 3, 5, 16

Fed. R. Civ. P. 17(b) .................................................................... 17

Fed. R. Civ. P. 23 ................................................................. *passim*

Fed. R. Civ. P. 23(a) .................................................................... 17

## INTRODUCTION

Plaintiffs have filed a national class action against Defendants alleging claims for breach of contract, bad faith breach of insurance contract, and civil conspiracy claims in connection with their improper scheme designed to systematically, wrongfully, and arbitrarily deny them their first-party personal injury protection and Medical Payments (collectively, "PIP") insurance benefits owed them under their USAA Group insurance policies, all of which include functionally identical language pertaining to payment of PIP claims. ¶¶ 1, 7, n.2, and Amended Complaint, generally.[1] Defendants move to strike the national class allegations in the Amended Complaint on the basis that S.C. Code Ann. § 15-5-150 (hereinafter the "Door-Closing Statute") prohibits Plaintiffs from representing a nationwide class action because the statute bars nonresidents of South Carolina from bringing an action against a foreign corporation on a cause of action arising out of state.

Defendants' argument flies in the face of the 4th Circuit's holding that only the residency of the named plaintiff is considered in applying the Door-Closing Statute to a national class action. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 186 n.3 (4th Cir. 1993). Additionally, Defendants' flawed argument is premised entirely, and mistakenly, on cases analyzing and applying the Door-Closing Statute under the Rules of Decision Act, 28 U.S.C. § 1652 and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and holding that a federal court exercising diversity jurisdiction must apply the Door-Closing Statute unless there are affirmative countervailing federal considerations. However, because the procedural Door-Closing Statute

---

[1] References to "¶__ "or "¶¶__" are to the Amended Complaint (ECF 37), unless otherwise noted.

1

conflicts with Rule 23,[2] governing membership in class actions, and Rule 17, governing capacity, the appropriate choice of law analysis is under the Rules Enabling Act, 28 U.S.C. § 2072, applying the Supreme Court's well-established, two-step framework for mediating any potential conflict articulated in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

The first step is determining whether the federal rule directly conflicts with the state law, *viz.*, whether it "answers the question in dispute." *Id.* at 393. If it does, the federal rule applies "unless it exceeds its statutory authorization or Congress's rulemaking power." *Id.* Here, Rule 23 and Rule 17 are sufficiently broad enough to answer the question in dispute, namely, with respect to Rule 23, whether Plaintiffs' suit may proceed as a national class action; and with respect to Rule 17, whether Plaintiffs (and the putative class members if they are considered part of the capacity equation) have capacity to bring a national class action. Under step two, and applying Justice Scalia's plurality opinion, which the Fourth Circuit has adopted in *Pledger v. Lynch*, 5 F.4th 511, 514 (4th Cir. 2021), because these procedural rules are neither inapplicable nor invalid, the Court cannot wade into *Erie*'s murky waters as mistakenly urged by Defendants.

Assuming, *arguendo*, that Justice Stevens' concurring opinion, which did not agree with Justice Scalia's approach under step two, applies here, Rule 23 and Rule 17 nevertheless still trump the Door-Closing Statute. Justice Stevens held that the second step does "turns on whether the state law actually is part of a State's framework of substantive rights or remedies."[3] Here, as the Fourth Circuit has held, the Door-Closing Statute is procedural and not intimately bound up with a state right or obligation being enforced. *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th

---

[2] Unless otherwise specified, the word "Rule" pertains to the Federal Rules of Civil Procedure. Moreover, unless otherwise specified, internal quotations and citations are omitted.

[3] *Shady Grove*, 559 U.S. at 419 (Justice Stevens concurring).

Cir. 1965). The Door-Closing Statute contains no substantive component and simply discriminates against nonresidents and is a statutory formulation of the doctrine of forum non conveniens. Thus, neither Rule 23 nor Rule 17 violate Justice Stevens' Rules Enabling Act test because applying either of these rules would not effectively enlarge a state-created substantive right or remedy in contradiction of the Rules Enabling Act's directive that federal rules "not abridge, enlarge or modify *any* substantive right."

Defendants' argument that Plaintiffs' nationwide class allegations should be dismissed in view of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017). also falls wide of the mark. *Bristol-Myers Squibb* held that forums do not have specific personal jurisdiction over non-resident corporations when the plaintiffs do not allege any specific connection between the forum and the specific claims at issue. As the majority of courts, including district courts in this circuit, have held, *Bristol-Myers Squibb* does not apply to nationwide class actions.

Defendants' argument that Plaintiffs lack Article III standing to assert nationwide class claims is equally misguided. Plaintiffs allege breach of contract and bad faith claims involving identical conduct, engaged in by Defendants nationwide, involving uniform insurance contracts. Defendants' standing argument would effectively bar any plaintiff from ever representing a nationwide class no matter how common the issues of fact and law, and presents an untimely attack on Rule 23 class action requirements that should be left for class certification proceedings.

Finally, Defendants' argument that Plaintiffs' conspiracy claims should be dismissed because Plaintiffs failed to plead overt acts in furtherance of the conspiracy that are separate from other wrongful acts alleged is way offsides. Plaintiffs allege numerous overt acts in furtherance of the conspiracy that are independent from other wrongful acts alleged, including

3

acts involving Auto Injury Solutions ("AIS"), an unnamed co-conspirator who is not a party to the contracts between Plaintiffs and Defendants, and whose wrongful acts in furtherance of the conspiracy are, thus, necessarily independent from those alleged in Plaintiffs' breach of contract and bad faith claims against Defendants.

## ARGUMENT

I. **The Fourth Circuit Holding in *Cent. Wesleyan* that Only the Residency of the Named Plaintiff Is Considered in Applying the Door-Closing Statute to a National Class Action Applies Equally to Determining Capacity.**

In *Cent. Wesleyan*, the court rejected defendants' argument that the Door-Closing Statute[4] barred the non-South Carolina colleges nationwide subclass from suing non-South Carolina defendants in South Carolina. *Cent. Wesleyan*, 6 F.3d at 186 n.3. The court held that the class representative was "a South Carolina resident whose suits the statute does not bar." *Id*. Thus, according to the court, only the residency of the named plaintiff is considered in applying the Door-Closing Statute to a national class action. *See also* Part III., *infra* (citing authorities rejecting extending the holding of *Bristol-Myers Squibb* to national class actions in holding *inter alia*, that absent class members are not considered "parties"); Part IV., *infra* (standing inquiry at this stage should be limited to only the named Plaintiffs). The logical corollary of the holding in *Cent. Wesleyan* is that only the domicile of the class representatives is considered in considering capacity and applying the Door-Closing Statute in a national class action.[5] The *Cent. Wesleyan*

---

[4] The Door-Closing Statute provides:
> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
> (1) By any resident of this State for any cause of action; or
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150.

[5] The South Carolina Supreme Court's decision in *Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003) (discussed *infra*) holding that the Door-Closing Statute pertains to capacity does not change this result. As the court in *Tuttle* held, "[t]he door-closing statute operates the

4

court noted as an aside, that "[e]ven if non-South Carolina colleges were class representatives, it is doubtful that the statute would apply because of the current countervailing federal policy in favor of consolidating asbestos litigation." *Cent. Wesleyan*, 6 F.3d at 186 n.3.  This dictum pertains to the analysis under the Rules of Decision Act. However, as shown herein, under the applicable Rules Enabling Act, Rule 23 and Rule 17 trump the Door-Closing Statute in national class actions.

## II.    Under the Rules Enabling Act, Rule 23 and Rule 17 Trump the Door-Closing Statute; Thus, the Statute Does Not Prohibit Plaintiffs from Representing a Nationwide Class.

Defendants' flawed argument that the Door-Closing Statute bars national class actions is premised entirely on the line of cases interpreting this statute under the Rules of Decision Act and *Erie*, including *York*, *Woods* and *Angel* -- decisions which the *Szantay* court analyzed in deciding whether to apply the Door-Closing Statute. Decisions post-*Szantay* similarly analyzed the Door-Closing Statute under the Rules of Decision Act, relying on *Szantay*. Neither *Szantay* nor any of the subsequent decisions analyzed whether Rule 23 and Rule 17 trumped the Door-Closing Statute under the Rules Enabling Act and the Supreme Court's "familiar" two-step framework set forth in *Shady Grove*. As shown herein, applying the familiar two-step framework set forth in Justice Scalia's plurality opinion, adopted by the Fourth Circuit in *Pledger*, or applying Justice Stevens' concurring opinion in *Shady Grove*, both Rules 23 and 17 readily trump the Door-Closing Statute.

---

same today as when the Fourth Circuit [in *Szantay*] considered the issue over forty years ago, despite the South Carolina Supreme Court's reinterpretation [in *Farmer*]." *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 551 (D.S.C. 2006).

**A. The *Erie* Decision Interpreting the Rules of Decision Act, and Supreme Court Decisions Attempting to Fashion a Test for Applying the *Erie* Doctrine.**

The Supreme Court in *Erie* interpreted and applied the Rules of Decision Act which provides that "[t]he laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in  trials at common law, in the courts of the United States, in cases where they apply." *Erie*, 304 U.S. at 71. The Court held that the Rules of Decision Act included state court decisions in its reference to the controlling force of state law in federal courts. *Id*. at 72-73, 78.

After *Erie*, the Supreme Court issued a number of decisions attempting to fashion a test for applying the *Erie* doctrine. In *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99 (1945), the Court held that a federal court exercising diversity jurisdiction must apply the statute of limitations of the forum, advancing the "outcome determination" test for choosing between state and federal law, under which the federal court must apply a state rule whenever enforcing a general rule would be likely to generate a different outcome. *Id*. at 110.

The Supreme Court thereafter rendered a number of decisions relying on *York*, including *Angel v. Bullington*, 330 U.S. 183 (1947) (*Erie* doctrine mandated following the North Carolina policy against deficiency judgments) and *Woods v. Interstate Realty Co*., 337 U.S. 535, 538 (1949) (Mississippi door-closing statute precluding an unregistered foreign corporation from bringing any suit in the courts of the state should govern in the diversity action). The *Woods* Court held that a plaintiff "barred from recovery in the state court ... should likewise be barred in the federal court," and that "[t]he contrary result would create discriminations against citizens of

the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts."

*Woods*, 337 U.S. at 538.[6]

      Later, in *Byrd*, the Court applied a modified "outcome-determinative" test, recognizing

the needs of the federal system - affirmative countervailing considerations - requiring courts to

balance state and federal interests when conducting an *Erie* analysis. *Byrd v. Blue Ridge Rural*

*Elec. Co-op., Inc*., 356 U.S. 525, 537-38 (1958).[7] As discussed in Part II.C, *infra*, the court in

*Szantay* relied on *Byrd* and distinguished *Woods* and *Angel*, in analyzing the Door-Closing

Statute.

### B.  *Hanna's* Inquiry under the Rules Enabling Act in Determining Whether a Federal Rule of Civil Procedure Applies Over a Conflicting State Law.

      The Supreme Court again clarified *Erie* in *Hanna v. Plumer*, 380 U.S. 460 (1965). In

*Hanna*, the Court held that where application of a Federal Rule of Civil Procedure in a diversity

action is in question, a court must focus its inquiry on the Rules Enabling Act, 28 U.S.C. §

2072.[8] Thus, the *Hanna* Court drew a sharp distinction between choice-of-law decisions

involving a Federal Rule of Civil Procedure, which are governed by the Rules Enabling Act, and

decisions not involving a Federal Rule, which are governed by the Rules of Decision Act. The

Court in *Hanna* held that a federal court should apply a Federal Rule of Civil Procedure rather

---

[6] In *Woods*, the Court, noted that "the *York* case was premised on the theory that a right which
local law creates but which it does not supply with a remedy is no right at all for purposes of
enforcement in a federal court in a diversity case." *Id.*
[7] In *Byrd*, the issue was whether, in a diversity case, the judge or the jury should decide the
question of an employer's immunity under a state workers' compensation law.
[8] Enacted in 1934, the Rules Enabling Act authorizes the promulgation of rules of practice and
procedure and that the Federal Rules of Civil Procedure promulgated under its authority "shall
not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b)

than a conflicting state rule if the court determines that the Rule falls within the authority of the

Rules Enabling Act and a constitutional grant of power to Congress. *Id*. at 463-64, 472-73.[9]

### C. The Fourth Circuit's Decision in *Szantay* Employing a Rules of Decision Act Analysis in Deciding Whether to Apply the Door-Closing Statute.

In *Szantay*, a case not involving a class action, the court applied a Rules of Decision Act

analysis in holding that a district court may entertain a suit by a nonresident against a foreign

corporation on a cause of action arising in another state despite the Door-Closing Statute barring

such a suit in state courts. The court pronounced a multi-step balancing test adapted from the

Supreme Court's opinion in *Byrd*, whereby a court must first determine whether it must apply a

state law because either the state law is the substantive right or obligation at issue in the case or

the law is intimately bound with the state right or obligation. *Szantay*, 349 F.2d at 63. If the state

law does not meet these tests, but its application would substantially affect the outcome of the

litigation, the federal court must still apply it unless there are "affirmative countervailing federal

considerations." *Id*. at 64.

Applying this multi-step balancing test, the *Szantay* court found that the Door-Closing

Statute was procedural and was not intimately bound up with a substantive state right or

---

[9]*Hanna* applied the Rules Enabling Act analysis. However, in dictum, *Hanna* reformulated the *Erie* test under the Rules of Decision Act by advancing a modified version of the *York* outcome determination test in a Rules of Decision Act case, *viz*., a case which does not involve a conflict between a Federal Rule and a state rule. The Court explained that this choice should be analyzed under the twin aims of *Erie*: avoidance of inequitable administration of laws, *viz*., whether the failure to enforce a state law would unfairly discriminate against citizens of the forum state; and discouragement of forum-shopping. *Hanna*, 380 U.S. at 468 and n.9; *see Kanouse v. Westwood Obstetrical & Gynecological Assocs*., 505 F. Supp. 129, 130 (D.N.J. 1981) (noting dictum in *Hanna*, but further noting the test enunciated in *Hanna* was reaffirmed by the Court in *Walker v. Armco Steel Corp*., 446 U.S. 740 (1980)).

obligation. *Id*. at 63-64. Relying on the outcome determinative test as modified by *Hanna*, the court concluded that the constitutional compulsions of the *Erie* doctrine did not apply.[10]

However, the *Szantay* court determined that the statute would substantially affect the outcome such that it must be applied absent countervailing federal considerations. *Id*. Although the court was unable to ascertain the state's reason for enacting the Door-Closing Statute, it observed that the federal policies supporting application of federal law were explicit and numerous. *Id*. at 65.[11] Thus, the court held that any conflict must be resolved in favor of the federal interest in providing a convenient forum for adjudication of the action. *Id*. at 66.

### D.  Following *Szantay*, Federal Courts Have Applied Only a Rules of Decision Act Analysis, and Not an Enabling Act Analysis, in Applying the Door-Closing Statute.

In *Bumgarder*, a case not involving a class action, the court affirmed the district court's finding that the Door-Closing Statute barred the action. *Bumgarder v. Keene Corp.*, 593 F.2d 572, 573 (4th Cir. 1979) (per curiam). The court stated that it "[did] not think countervailing federal considerations required the district court to entertain his suit and to ignore the South Carolina statute." *Id*. (limiting *Szantay*'s countervailing federal considerations to only the absence of an available forum). *Id*.

The next year, the court in *Proctor*, a case not involving a class action, applied a Rules of Decision Act analysis in holding that the Door-Closing Statute deprived the district court of jurisdiction. *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739-40 (4th Cir. 1980) ("[a]

---

[10] Referring to *Hanna*'s dictum regarding analysis under the Rules of Decision Act, the Court noted that its "conclusion is fortified by the recent decision in [*Hanna*]." *Id*. at 64.

[11] The *Szantay* court identified the federal policies as protection of the subject matter jurisdiction of federal courts; the policy of the full faith and credit clause; and efficient joinder in multiparty actions, finding that the defendant Dixie could be served only in South Carolina. *Id*. at 64–65.

plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction").

Later, in *Cent. Wesleyan*, as discussed in Part I., the court rejected defendants' argument that the Door-Closing Statute barred the non-South Carolina colleges nationwide subclass from suing non-South Carolina defendants in South Carolina, holding that the class representative was "a South Carolina resident whose suits the statute does not bar." *Cent. Wesleyan*, 6 F.3d at 186 n.3. The court noted, in dictum, that "[e]ven if non-South Carolina colleges were class representatives, it is doubtful that the statute would apply because of the current countervailing federal policy in favor of consolidating asbestos litigation." *Id.*

In 2003, the South Carolina Supreme Court analyzed the Door-Closing Statute in a nationwide class action case in which the class representatives were South Carolina residents. The *Farmer* court held, for the first time, that the Door-Closing Statute affects only a party's capacity to sue. *Farmer*, 353 S.C. at 557. The *Farmer* court further held that *Cent. Wesleyan* was not controlling because the Door-Closing Statute, on its face, "applies only to actions brought in the *circuit court*," and thus "[t]he statute clearly does not apply to federal suits and the Fourth Circuit's ruling on its non-application in [*Cent. Wesleyan*] is irrelevant." *Id*. at 558 (emphasis in original).

Three years after the *Farmer* decision, the district court in *Tuttle*, a case not involving a class action, upheld the application of the Door-Closing Statute, observing that "[i]t has been long held that federal courts sitting in diversity must apply section 15–5–150 unless countervailing federal interests preclude its application." *Tuttle*, 463 F. Supp. 2d at 549 (citing, *inter alia*, *Cent. Wesleyan*, 6 F.3d at 186 n.3; *Proctor & Schwartz*, 634 F.2d at 739; *Bumgarder*, 593 F.2d at 573; *Szantay.*, 349 F.2d at 63-64). The *Tuttle* court held that, despite the *Farmer*

10

court's interpretation of the statute as pertaining only to capacity to sue and applying only to actions brought in the circuit court, the statute continues to apply in diversity suits. *Tuttle*, 463 F. Supp. 2d at 549 (citing *Woods*, 337 U.S. at 538 ("a right which local law creates but which it does not supply with a remedy is not right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state, he should likewise be barred in the federal court")).[12]

The following year, the court in *Ward*, a case involving a multi-state class action, held that it was unnecessary to decide what effect the Door-Closing Statute, as reinterpreted by the court in *Farmer*, has on class membership in suits in South Carolina federal court sitting in diversity because the plaintiff failed to establish the proposed multi-state class met Rule 23(b)(3)'s predominance requirement. *Ward v. Dixie Nat. Life Ins. Co*., 257 F. App'x 620, 627-628 (4th Cir. 2007).

In *Spelman*, also a multi-state class action, the court, relying on *Tuttle*, held that the Door-Closing Statute barred plaintiff, a foreign resident, from bringing an action against a foreign corporation in a South Carolina federal court for violation of consumer protection statutes in eleven states other than South Carolina. *Spelman v. Bayer Corp*., No. 7:10-cv-00091-JMC, 2011 WL 13312222, at *5 (D.S.C. Feb. 22, 2011). However, the *Spelman* court only addressed the Door-Closing Statute in the context of the capacity of the nonresident class representative who resided in Connecticut, and it did not address whether a national class action would be barred if the class representative had capacity to bring the suit individually.

---

[12] The *Tuttle* court held that "[t]he door-closing statute operates the same today is when the Fourth Circuit considered the issue over forty years ago, despite the South Carolina Supreme Court's reinterpretation." *Id*. at 551.

District courts have continued to apply the Door-Closing Statute, analyzing the statute under the Rules of Decision Act and relying on *Szantay* and *Proctor*, as opposed to analyzing the statute under the Rules Enabling Act, and reasoning that a federal court exercising diversity jurisdiction must apply the Door-Closing Statute unless there are affirmative countervailing federal considerations. *Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750, 752 (D.S.C. 2014) (not a class action); *Hart v. Navy Fed. Credit Union*, No. 2:21-44-RMG, 2021 WL 2418459, at *3 (D.S.C. June 11, 2021) (each member of the national putative class must meet the requirements of the Door-Closing Statute).

In *Hart*, the plaintiff never argued that Rule 17 or Rule 23 trumped the Door-Closing Statute under a Rules Enabling Act analysis, but instead relied on *Farmer*'s holding that the Door-Closing Statute did not apply to federal suits. Plaintiff also argued that the statute did not apply because of the countervailing federal policy of judicial economy and efficiency in conducting a national class action. The court disregarded the dictum in *Farmer*, and then held that "[j]udicial economy and efficiency will potentially be an issue in every case," distinguishing the countervailing federal policy of consolidating asbestos litigation in *Cent. Wesleyan*. *Hart*, 2021 WL 2418459, at *3. However, the court's holding in *Hart* is contrary to the holding in *Cent. Wesleyan* that the class representative in a national class action was "a South Carolina resident whose suits the statute does not bar." *Cent. Wesleyan*, 6 F.3d at 186 n.3. Significantly, the court in *Hart* did not do an analysis under the Rules Enabling Act, and, indeed, did not even refer to *Shady Grove*, or to its two-step framework that applies when a federal rule and a state law both seemingly govern.

E.  **The Supreme Court's Decision in *Shady Grove* Describing the Two-Step Framework under the Enabling Act.**

In *Shady Grove*, the Supreme Court addressed whether Rule 23 governing class actions conflicted with a New York state law ("§ 901") that precludes class action suits seeking penalties or statutory minimum damages. 559 U.S. at 396. Justice Scalia delivered the 4-1-4 plurality decision opinion of the Court with respect to Parts I and II-A. In Part II-A, the Court reiterated the "familiar" two-step framework that applies when a federal rule and a state law both seemingly govern. *Id*. at 398. The first step is determining whether the federal rule directly conflicts with the state law. A direct conflict exists if the federal rule "answers the question in dispute." *Id*. If it does, the federal rule applies "unless it exceeds statutory authorization or Congress's rulemaking power." *Id*. at 393.

Five justices agreed that Rule 23 and § 901 "flatly contradict[ed]" each other. *Id*. at 405. Therefore, the next question was whether the federal rule exceeded the scope of the Rules Enabling Act, 28 U.S.C. § 2017, *et. seq*. *Id*. Justice Stevens declined to join Part II-B of Justice Scalia's opinion addressing the validity of Rule 23. In that section, Justice Scalia stated that a Federal Rule of Civil Procedure is within the Rules Enabling Act if the Rule is procedural in nature, meaning that it **"**governs only the manner and the means by which the litigants' rights are enforced." *Id*. at 407. Justice Scalia determined "the substantive nature of New York's law, or its substantive purpose, *makes no difference*." *Id*. at 409 (emphasis in original). "In sum, it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Id*. at 410.

Justice Stevens wrote a separate opinion and held that a "federal rule ... cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope

13

of the state-created right." *Id*. at 423. Justice Stevens held that "the bar for finding an Enabling Act problem is a high one." *Id*. at 432.

**F. The Fourth Circuit Has Adopted Justice Scalia's Plurality Opinion in *Shady Grove*.**

In *Pledger*, the Fourth Circuit adopted Justice Scalia's plurality opinion in *Shady Grove* in holding that West Virginia Medical Professional Liability Act's ("MPLA") requirement that a plaintiff secure a certification from a medical expert before filing suit was inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court. *Pledger*, 5 F.4th at 514.

Applying the well-established, two-step framework set forth in *Shady Grove*, the court in *Pledger* held that Rules 8, 9, 11 and 12 were sufficiently broad to control a question that the MPLA seeks to answer, finding that it is "impossible to reconcile" certificate requirements like West Virginia's with the "requirements of the Federal Rules of Civil Procedure." *Id*. at 519-20. Thus, the court held that "[b]ecause the Federal Rules answer that question in the negative, West Virginia's MPLA cannot apply to Pledger's federal-court action under step one of the *Shady Grove* framework." *Id*. (citing *Shady Grove*, 559 U.S. at 398-99).

Turning to step two, the *Pledger* court addressed "whether the MPLA nevertheless govern[ed] [the] case because the relevant Federal Rules are 'ultra vires' – that is, outside Congress's constitutional rulemaking power or the statutory authorization provided by the Rules Enabling Act." *Id*. at 520-21 (citing *Shady Grove*, 559 U.S. at 398-99; *Hanna*, 380 U.S. at 471). The court held that "[t]he Federal Rules of Civil Procedure enjoy 'presumptive validity under both the constitutional and statutory constraints,' *Burlington N. R.R. Co.*, 480 U.S. [1,] 6, 107 S.Ct. 967 [(1987)], and the Supreme Court has '[s]o far ... rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act,' *Abbas v. Foreign* [*Policy*] *Grp.*, *LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015)." *Id*. at 521. The *Pledger* court further held that "[l]ike

14

other courts to consider the question, we see 'no reason to doubt the validity of the Federal Rules at issue here.'" *Id*. (citing *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019); *Shields v. United States*, 436 F. Supp. 3d 540, 548 n.6 (D. Conn. 2020)). Thus, the court held that "*[i]t follows* that the Federal Rules, not the MPLA, govern Pledger's claim in federal court, and that the district court erred by applying West Virginia's certificate requirement." *Id*. (emphasis added).

By holding that "*it follows*" that the Federal Rules govern plaintiff's claim in federal court after determining that the federal rules were valid, and without analyzing whether the MPLA was "intertwined" with any substantive right, the Fourth Circuit has adopted Justice Scalia's plurality opinion in *Shady Grove*, and "the substantive nature of [the state's] law, or its substantive purpose, *makes no difference*." *Shady Grove*, 559 U.S. at 409 (emphasis in original).[13]

### G. Both Rule 23 Governing Membership in Class Actions, and Rule 17 Governing Capacity, Trump the Door-Closing Statute under Either Justice Scalia's Opinion in *Shady Grove* or Justice Stevens' Concurring Opinion.

As shown in Part II., C-D, *supra*, the courts in the Fourth Circuit have applied the Door-Closing Statute in diversity cases, analyzing the statute under the Rules of Decision Act, as opposed to analyzing the statute under the Enabling Act, and applying the reasoning in *Szantay* and *Proctor* that a federal court exercising diversity jurisdiction must apply the Door-Closing Statute unless there are affirmative countervailing federal considerations. As pointed out in *Shady Grove* and *Pledger*, when a Federal Rule conflicts with a state law, the appropriate analysis is under the Enabling Act. As shown herein, both Rule 23 governing membership in

---

[13] The court in *Pledger* did not cite or refer in any way to Justice Stevens' concurring opinion.

class actions, and Rule 17 governing capacity, trump the Door-Closing Statute under either Justice Scalia's opinion in *Shady Grove* or Justice Stevens' concurring opinion.

> **1. Applying Justice Scalia's opinion in *Shady Grove*, Rule 23 and Rule 17 trump the Door-Closing Statute, thus allowing Plaintiffs to represent a national class in federal court.**
>
> > **a. The Door-Closing Statute conflicts with Rule 23.**

The Door-Closing Statute operates to bar national class actions which are governed by Rule 23. Thus, under *Shady Grove*, the Court must first determine whether Rule 23 "answers the question in dispute." *Shady Grove*, 559 U.S. at 398. As in *Shady Grove*, the question in dispute is whether Plaintiffs' suit may proceed as a national class action. *Id*. And as in *Shady Grove*, "Rule 23 provides an answer. It states that '[a] class action may be maintained' if two conditions are met [*viz*., satisfaction of the criteria in subdivision (a) and fitting into one of the three categories described in subdivision (b)]." *Id*. (citing Fed. R. Civ. P. 23(b)).

"By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id*. "Thus, Rule 23 provides a one-size-fits-all formula for deciding the class-action question." *Id*. at 399.[14] Because the Door-Closing Statute attempts to answer the same question—*i.e.*, it states that a nonresident may not bring an action against a nonresident unless the cause of action occurred in South Carolina, to prohibit national class-action lawsuits - it cannot apply in diversity suits unless Rule 23 is ultra vires. *Id*. Thus, as in *Shady Grove*, Rule 23 and the Door-Closing Statute conflict.[15]

---

[14] The fact that the *Farmer* Court has characterized the statute as pertaining to capacity and has held that "§ 15-5-150 controls the eligibility of class members in a class action where the defendant is a foreign corporation" (353 S.C. at 559) does not change this result. The Court in *Shady Grove* specifically rejected this "eligibility" argument, holding "[t]o begin with, the line between eligibility and certifiability is entirely artificial. Both are preconditions for maintaining a class action." 559 U.S. at 399.

[15] The subjective intent of the legislature in adopting the Door-Closing Statute is irrelevant to step one of the inquiry under *Shady Grove*. 559 U.S. at 404.

### b.  The Door-Closing Statute conflicts with Rule 17(b)(1).

Applying the same framework above also reveals that the Door-Closing Statute conflicts with Rule 17(b)(1). As noted above, the Door-Closing Statute "determines the capacity of a party to sue." *Farmer*, 353 S.C. at 557. By its plain terms, so too does Rule 17. Rule 17, like Rule 23, answers the question in dispute, namely, whether Plaintiffs have capacity to bring a national class action, and provides:

> Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> ***
>
> (3) for all other parties, by the law of the state where the court is located, except that…:

Fed. R. Civ. P. 17(b).

Rule 23 and the Class Action Fairness Act, 28 U.S.C. §1332(d), provide the test controlling membership in federal class actions and impose no limit on the capacity on membership in federal classes. Rule 17, in turn, controls capacity of a class representative in a diversity federal class action. The class members are deemed to share the residency of the class representative, all of whom are domiciled in South Carolina and all of whom have capacity to sue Defendants in South Carolina.[16] So long as the named plaintiffs are South Carolinians, the Door-Closing Statute does not bar their suit on behalf of non-South Carolina class members. *See Cent. Wesleyan*, 6 F.3d at 186 n.3 ("Central Wesleyan, however, is a South Carolina resident whose suits the statute does not bar."); *see also Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 639 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993) ("[t]he Supreme Court has held

---

[16] *See N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir. 1990) ("members of a class in a class action are deemed to have the same citizenship as that of the class representative") (citing Fed. R. Civ. P. 23(a); *Snyder v. Harris*, 394 U.S. 332, 340 (1969)).

that it is 'merely a matter of form' for an absent class member to become a formal party of record by intervention") (citing *Stewart v. Dunham,* 115 U.S. 61 (1885)).

However, to the extent the capacity of putative class members domiciled outside of South Carolina is needed as argued by Defendants, Rule 23 would borrow and apply Rule 17's test of a party's capacity. Rule 17(b)(1) provides that capacity to sue is determined by the law of their domiciles. Thus, it is impossible to reconcile the Door-Closing Statute with Rule 17.

### c. Neither Rule 23 nor Rule 17 exceed statutory authorization or Congress's rulemaking power.

#### i. Rule 23 is procedural in nature and does not violate the Rules Enabling Act.

Justice Scalia held that Rule 23 is a procedural rule which falls within the Rules Enabling Act's § 2072(b)'s authorization. Justice Scalia reasoned that "[a] class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove*, 559 U.S. at 408.

Applying Justice Scalia's same analysis and reasoning here, the Door-Closing Statute does not preclude a federal district court sitting in diversity from entertaining a national class action under Rule 23. Rule 23 does not change Plaintiffs' or the non-South Carolina domiciled putative class members' separate entitlements to relief, nor does it abridge Defendants' rights; Rule 23 alters only how the claims are processed.[17]

---

[17] *See also In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 117–19 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ("It is clear that Rule 23 would permit a non-Connecticut resident to serve as a named plaintiff of a class action, and the Supreme Court has already determined the rule to be procedural."); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2021 WL 2154976, at *5-8 (D.N.J. May 27, 2021) ("Rule 23, not state law, governs the availability of class action treatment of Plaintiff's claims.").

18

### ii. Rule 17(b)(1) is procedural in nature and does not violate the Rules Enabling Act.

"Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters 'rationally capable of classification' as procedure." *Shady Grove*, 559 U.S. at 406 (citing *Hanna*, 380 U.S. at 472). The Rule must "really regulat[e] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Id*. at 407. "The test is not whether the rule affects a litigant's substantive rights; most procedural rules do." *Id*. "What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not. *Id*. Notably, Justice Scalia observed that "[a]pplying that test, we have rejected every statutory challenge to a Federal Rule that has come before us." *Id*.

As with Rule 23, Rule 17(b)'s capacity to sue provisions regulate "matters rationally capable of classification as procedure," and go no further than that prescribed in the Rules Enabling Act. Rule 17(b) serves to provide a uniform standard by which federal courts can exercise jurisdiction over a corporation and is part of the judicial process for enforcing rights and duties recognized by substantive law; it does not address or impact any rights, duties, and remedies that are litigated. Because this purpose bears directly on the smooth and efficient operation of the federal court system, Rule 17(b) can be rationally classified as procedural.[18]

---

[18]*See Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech., LLC*, 325 F.R.D. 570, 577 (E.D. La. 2016) (finding "capacity to sue" as procedural, and holding that Rule 17(b), not state law, "provides for the capacity to sue of individuals, corporations, and all other parties").

19

The practical effect of granting Defendants' Motion would be to invalidate Rule 17(b). However, as Justice Scalia pointed out, "[a] Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others—depending upon whether its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes)." *Shady Grove*, 559 U.S. at 409.

Notably, the courts in *Tuttle* and *Hart*, and other cases cited in Part II.D, were not asked to, and did not, conduct a Rules Enabling Act analysis of Rule 17(b). Instead, the plaintiff in *Tuttle* argued that the Door-Closing Statute did not apply to his case because of *Farmer*'s holding that "the statute clearly does not apply to federal suits." *Farmer*, 353 S.C. at 558. The court in *Tuttle* rejected this argument, relying on the holding in *Woods* that applied state court door-closing statutes to federal courts sitting in diversity because failure to do so "would create discrimination against citizens of the State in favor of those who can invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that [*Erie*] was designed to eliminate." *Tuttle*, 463 F. Supp. 2d. at 549 (quoting *Woods*, 337 U.S. at 538). But, as the Supreme Court reiterated in *Shady Grove*, "[w]e do not wade into *Erie's* murky waters unless the federal rule is inapplicable or invalid." *Shady Grove*, 559 U.S. at 398. Because Rule 17(b) is neither inapplicable nor invalid, the concerns raised by *Woods* do not apply here.[19]

---

[19] In *Woods*, discussed in Part II.A, *supra*, the Supreme Court applied a Rules of Decision Act analysis and did not even mention Rule 17(b). The continuing vitality of *Woods* has been called into question in the wake of *Hanna. See*, *e.g.*, *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 381 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 843 (2d Cir. 1999) ("*Hanna* implicitly calls *Woods* into question by suggesting that Rule 17(b) applies to the exclusion of a forum state door-closing statute so long as it is a valid exercise of authority under the Rules Enabling Act."); *McKenzie v. Haw. Permanente Med. Grp., Inc.*, 29 F. Supp. 2d 1174, 1176 (D. Haw. 1998) ("First, the continuing vitality of *Woods* has been questioned."); *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, No. 14-cv-1223, 2014 WL 4748272, at *4 (C.D. Ill. Sept. 24, 2014) (unpublished) (same); *see also* Laura E. Little, *Out of Woods and Into the Rules: The Relationship Between State Foreign Corporation Door–Closing Statutes and Federal Rule of Civil Procedure 17(b)*, 72

Therefore, because Rule 17(b)(1) governs the individual plaintiffs' capacity to sue, as well as the capacity of the putative class members domiciled outside of South Carolina (if their capacity is deemed part of the equation), the conflicting Door-Closing Statute does not apply.

    2.    **Applying Justice Stevens' concurring opinion in *Shady Grove*, Rule 23 and Rule 17 trump the Door-Closing Statute, thus allowing Plaintiffs to represent a national class in federal court.**

As noted above, Justice Stevens, in his concurring opinion, agreed with the first step of the analysis as set forth by Justice Scalia in *Shady Grove* and that Rule 23 and § 901(b) conflict. However, in disagreeing with Justice Scalia's application of the second step, Justice Stevens held that the second step does "not necessarily turn on whether the state law at issue takes the *form* of what is traditionally described as substantive or procedural. Rather, it turns on whether the state law actually is part of a State's framework of substantive rights or remedies." *Shady Grove*, 559 U.S. at 419 (emphasis in original). Justice Stevens pointed out that "[i]n evaluating that legislative history, it is necessary to distinguish between procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy. Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule 'defines the dimensions of [a] claim itself.'" *Id*. at 433-34 (emphasis in original).

Thus, reviewing the New York statute's legislative history, its application by New York courts, and its role in New York's statutory regime more broadly, Justice Stevens found that, because the New York statute "applies not only to claims based on New York law but also to claims based on federal law or the law of any other State ... [i]t is ... hard to see how § 901(b)

---

Va. L. Rev. 767, 769 (1986) (arguing that "a federal court should apply Rule 17(b), rather than the forum's foreign corporation door-closing statute, to determine whether a corporation has the capacity to sue ... in a diversity action").

could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.* at 432. Justice Stevens concluded that New York's statute was not "intertwined" with any substantive right and, therefore, that Rule 23 did not "abridge, enlarge, or modify" any substantive state right. *Id.* at 436.[20]

Here, as the court in *Szantay* held, the Door-Closing Statute is procedural and not intimately bound up with a state right or obligation being enforced. *Szantay*, 349 F.2d at 64; *see also Criteo SA v. Unique USA, Inc.*, No. 0:18-cv-02889-JMC, 2019 WL 3252958, at *4 (D.S.C. July 19, 2019) ("§ 33-15-102 is a procedural provision"). Consistent with Justice Stevens' analysis, because the Door-Closing Statute applies to claims based on federal law and the law of other States, it is hard to see how the statute could be understood as a rule that, though procedural in form, serves the function of defining South Carolina's rights or remedies. *Shady Grove*, 559 U.S. at 432.

Unlike the statute in *Angel* (policy against deficiency judgments) and *Woods* (registration requirement for foreign corporations), the Door-Closing Statute has no clearly expressed purpose and does not provide a limitation on the scope of any cause of action. *Szantay*, 349 F.2d at 66. The Door-Closing Statute simply discriminates against nonresidents; "South Carolina has no policy against the particular plaintiffs, as Mississippi had against nonregistered foreign corporations in *Woods*, nor does it discourage a type of action, as North Carolina did in respect to deficiency judgments in *Angel*." *Id.*

Thus, unlike the statutes in *Angel* and *Woods* involving police-power measures, the Door-Closing Statute is effectively a forum non conveniens statute. *See Szantay*, 349 F.2d at 64-65

---

[20] Justice Stevens observed that "[i]t will be rare that a federal rule that is facially valid under 28 U.S.C. § 2072 will displace a State's definition of its own substantive rights." *Shady Grove*, 559 U.S. at 426 n.10.

(noting that the state's reason for enacting the statute could have been for relief of docket congestion or as a statutory formulation of the doctrine of forum non conveniens, and noting that, if so, "federal cognizance of the case would in no way frustrate state policy"). The *Woods* rationale, assuming its holding is still valid (*see* n.24, *supra*), has no application to a forum non conveniens door-closing statute. "It is difficult to argue that a state's unwillingness to clutter its dockets or to inconvenience witnesses should have any effect on the power of a federal district court to entertain cases brought before it." Note, *Federal Courts: Effect of State Statute on Jurisdiction of Federal Courts,* 24 IND.L.J. 418, 424 (1949).[21]

Nor do the purposes of the Door-Closing Statute as later set forth in *Rosenthal v. Unarco Indus., Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982) (relied upon in *Farmer*) define the scope of any substantive right or remedy. The first two objectives, *viz.*, favoring resident plaintiffs over nonresident plaintiffs and relieving the state of the burden of adjudicating matters in which it has little interest, discriminate against nonresidents and are aligned with forum non conveniens and docket congestion-related goals. The third objective, *viz.*, to encourage out-of-state corporations to do business in the state without fear of being sued there for matters unconnected with their business in the state, is not only unrelated to any substantive rights or remedy, the Supreme Court's decision in *Daimler*, limiting general personal jurisdiction, has rendered this third objective essentially moot.[22]

---

[21] *See also id*. at 422-23 (it would take "an absurd turn of reasoning" to apply the *Woods* rationale to a forum non conveniens door-closing statute of the second kind).

[22] In *Daimler*, the Supreme Court restricted general personal jurisdiction to where the defendant is "at home," holding that "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Outside these paradigms, general personal jurisdiction may be found only in the "exceptional case" where a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home." *Id.* at 138 n.19

The Door-Closing Statute, which contains *no* substantive component, is in stark contrast

to statutes, such as the South Carolina Unfair Trade Practices Act ("SCUTPA"), containing

prohibitions against class actions ingrained in the very text of the statute and, thus, found to be

part of the substantive law. *See, e.g.*, *Fejzulai v. Sam's W., Inc*., 205 F. Supp. 3d 723, 727

(D.S.C. 2016) ("As Judge Lewis noted in *Stalvey*, SCUTPA is importantly different from the

state law at issue in *Shady Grove* because the New York law had *no* substantive

component….'the prohibitions against class actions ingrained in the very text of the SCUTPA

and Consumer Protection code are substantive portions of South Carolina law and are not

trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove* decision.'")

(quoting *Stalvey v. Am. Bank Holding, Inc.*, No. 4:13-cv-714, 2013 WL 6019320, at *4 (D.S.C.

Nov. 13, 2013)).[23]

The recent decision in *In re Jones* further supports the argument that the Door-Closing

Statute cannot bar a national class action. 618 B.R. 757 (Bankr. D.S.C. 2020). In *Jones*, the

defendant argued it lacked the capacity to be named as a party in a class action lawsuit because

S.C. Code § 12-60-80(C), made applicable to the action by Rule 17, provided that a state agency

cannot be named in any class action brought in the state of South Carolina. *Id*. at 761. In

rejecting defendant's argument, the court held that the statute contained a "broad prohibition on

class actions" that applies to all litigants, just like the statute at issue in *Shady Grove*. *Id*. at 765.

The court further held that the right to proceed in a class action is a procedural right. *Id*. The

---

[23] Defendants' reliance on decisions, including *Proctor* and *Hart*, applying a Rules of Decision analysis and failing to engage in a *Shady Grove* analysis is misplaced. *See Pledger*, 5 F. 4th at 523 ("we find the district court's reasoning in [*Davidson*] unconvincing, as it predates *Shady Grove* and offers no 'satisfactory response to the clear conflict between the federal pleading rules' and state law under that standard." (citing *Gallivan*, 943 F.3d at 296-97 (rejecting defendant's reliance on past cases that did not engage in the *Shady Grove* analysis)).

24

court distinguished *Stalvey*, holding that § 12-60-80(C)'s "limitation on maintaining a class action suit against the defendant does not affect substantive rights, but merely limits the method by which an action against the defendant is brought." *Id*. at 766. Thus, the court held that, "pursuant to *Shady Grove*, Rule 23, not the limitation set forth in S.C. Code § 12-60-80(C), applies." *Id.* at 767.

Here, neither Rule 23 nor Rule 17 violate Justice Stevens' Rules Enabling Act test because applying either of these rules would not effectively enlarge a state-created substantive right or remedy in contradiction of the Rules Enabling Act's directive that federal rules "not abridge, enlarge or modify *any* substantive right." *Shady Grove*, 559 U.S. at 422 (Justice Stevens concurring and quoting 28 U.S.C. § 2072(b)) (emphasis in original). As Justice Stevens pointed out, "[a]lthough most state rules bearing on the litigation process are adopted for some policy reason, few seemingly 'procedural' rules define the scope of a substantive right or remedy." *Id*. at 428; *id*. at 433-34 ("Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule 'defines the dimensions of [a] claim itself.'").[24]

Accordingly, the Door-Closing Statute cannot deprive federal courts of diversity jurisdiction of a national class action, and the Court should deny Defendants' Motion.

---

[24] *See also Lessin v. Ford Motor Co.*, No. 3:19-cv-01082-AJB-AHG, 2021 WL 3810584, at *15 (S.D. Cal. Aug. 25, 2021) ("state law class action bars are procedural rules because 'a rule barring class actions does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit'"); *Hatchett v. Henry Schein, Inc.*, No. 3:19-CV-83-NJR, 2020 WL 733834, at *3-4 (S.D. Ill. Feb. 13, 2020) ("Even if Justice Stevens's concurrence controls, allowing indirect purchasers to bring a class action in federal court under Rule 23 does not enlarge their substantive rights under Illinois law."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 552–53 (N.D. Ill. 2019) ("Even if Justice Stevens's plurality opinion applied, Defendant has not identified any authority for concluding that the class action bars at issue are so intertwined with a state-created right or remedy as to justify finding that it trumps Rule 23 under Justice Stevens's analysis.").

III.    **The Court Has Personal Jurisdiction Over Defendants with Respect to the Claims of Nonresident Putative Class Members.**

Defendants argue that Plaintiffs' nationwide class allegations should be dismissed because "the Court lacks personal jurisdiction over Defendants with respect to the claims of nonresident putative class members," relying on the Supreme Court's decision in *Bristol-Myers Squibb*. Motion at 9. Defendants' argument is fatally flawed and their reliance on *Bristol-Myers Squibb* is misplaced.

*Bristol-Myers Squibb* did not involve a class action, but instead involved a mass tort action wherein a group of plaintiffs, mostly non-California residents, sued a Delaware-incorporated and New York-headquartered defendant pharmaceutical company in a California state court. 137 S. Ct. at 1777. The Supreme Court held that because a connection is needed between the forum and the specific claims at issue to establish specific jurisdiction, the foreign defendant could not be brought into California court for the non-California plaintiffs' claims. *Id.* at 1778. The majority holding in *Bristol-Myers Squibb* was explicitly not extended to govern class actions. *See id*. at 1789 n.4 (Sotomayor, J., dissenting opinion) ("The Court today does not confront the question whether its opinion would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").

The majority of courts addressing whether *Bristol-Myers Squibb* extends to class actions, including lower courts in this Circuit, have determined that it does not. *Lyngaas v. Ag*, 992 F.3d 412, 434-35 (6th Cir. 2021) ("The vast majority of lower courts have rejected their arguments [collecting authorities], as has the only circuit court to have so far addressed the issue.") (citing,

26

*inter alia*, *Mussat v. IQVIA*, 953 F.3d 441 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1126 (2021)).[25]

      In *Mussat*, the Seventh Circuit noted that *Bristol-Meyers Squibb* did not involve a Rule 23 class action, wherein putative class members are regarded as "nonparties" and not considered for purposes of determining whether diversity of citizenship exists under 28 U.S.C. § 1332 or whether venue is proper. *Mussat*, 953 F.3d at 447. The court found "no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue." *Id*. The court noted that there has long been "a general consensus that due process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant.'" *Id.* at 445. The court found that "[f]or cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with respect to the named plaintiffs. . . . Once certified, the class as a whole is the litigating entity." *Id.* The court observed that even the Supreme Court has "regularly entertained cases involving nationwide classes where the plaintiff relied on specific, rather than general, personal jurisdiction in the trial court, without

---

[25] *See also*, *e.g.*, *Hager v. Omnicare, Inc*., No. 5:19-cv-00484, 2020 WL 5806627, at *4 (S.D.W. Va. Sept. 29, 2020) ("At least one of my colleagues in this District, as well as the majority of district courts that have considered the issue, have determined that *Bristol-Myers Squibb* is inapplicable in the Rule 23 context."); *Boger v. Citrix Sys., Inc*., No. 8:19-cv-01234-PX, 2020 WL 1033566, at *8 n.5 (D. Md. Mar. 3, 2020) (observing that a "significant supermajority of cases" have rejected the argument that *Bristol-Myers Squibb* constrains courts' jurisdiction over defendants with respect to unnamed class members."); *Progressive Health & Rehab Corp. v. Medcare Staffing, Inc*., No. 2:19-CV-4710, 2020 WL 3050185, at *3 (S.D. Ohio June 8, 2020) (same, collecting cases). Defendants' singular reliance on *In re Dicamba Herbicides Litig*., 359 F. Supp. 3d 711, 724 (E.D. Mo. 2019) is misguided as recognized by a subsequent decision in that district declining to follow that case, and holding that "[a]fter consideration, the Court declines to apply *Bristol-Myers* in this class action and agree[s] with the better reasoned decision of the numerous courts across the country that have declined to extend BMS." *Huskey v. Colgate-Palmolive Co*., 486 F. Supp. 3d 1339, 1352 (E.D. Mo. 2020) (collecting cases).

any comment about the supposed jurisdictional problem [raised by defendant]." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (a nationwide class action); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (a nationwide class action)). Thus, the *Mussat* court declined to accept the "major change in the law of personal jurisdiction and class actions" that an extension of the Supreme Court's ruling would affect. *Id.* at 448.

The Sixth Circuit has recently held it will follow "[the majority of cases] lead in holding that *Bristol-Myers Squibb* does not extend to federal class actions." *Lyngaas*, 992 F.3d at 435. (citing authorities, including *Mussat*). The *Lyngaas* court held that "[t]here are at least two related reasons supporting the long-standing rule. First, a class action is formally one suit in which, as a practical matter, a defendant litigates against only the class representative. Second and relatedly, precedent shows that absent class members are not considered 'parties,' as a class representative is, for certain jurisdictional purposes." *Id*. The court further held that "[t]he different procedures underlying a mass-tort action and a class action demand diverging specific personal jurisdiction analyses." *Id*. The court aptly recharacterized the salient issue by holding "[t]o put this issue another way, we are tasked, when determining whether a court may exercise specific personal jurisdiction over a defendant, to analyze the 'relationship among the defendant, the forum, and the litigation,' [*Daimler*, 571 U.S. at 132-33], and that relationship does not depend on the makeup of the unnamed class members." *Id*., at 437.[26]

---

[26] Additionally, it is premature to limit class membership or Plaintiffs' class allegations at this juncture based on *Bristol-Myers Squibb*. *See Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 312 (N.D. Ala. 2018) (applying *Bristol-Myers Squibb* before class certification "would require the Court to undertake the nearly impossible task of conducting specific jurisdiction analysis over parties not yet before it"); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (denying Defendant's motion to dismiss all nonresident putative class members for lack of personal jurisdiction based on *Bristol-Myers Squibb*, and holding that "[p]utative class members become parties to an action—and thus subject to dismissal—only after class certification.").

Like the Sixth Circuit's recent decision in *Lyngaas*, the Court should follow the lead of the majority of cases holding that *Bristol-Myers Squibb* does not extend to federal class actions, and should deny Defendants' Motion.[27]

## IV. Plaintiffs Have Article III Standing to Assert Nationwide Class Claims.

Defendants incorrectly assert that Plaintiffs lack Article III standing to assert the claims of a nationwide class "because their individual claims have no connection to the other 50 jurisdictions." Motion at 11.

In their Amended Complaint, Plaintiffs bring a nationwide class action against Defendants alleging claims for breach of contract and bad faith in connection with Defendants' breach of a uniform contract Defendants use nationwide. Plaintiffs also allege a conspiracy claim against Defendants in connection with Defendants' nationwide misconduct. The named Plaintiffs seek to act as class representatives for a proposed nationwide class that has been harmed by Defendants' identical nationwide misconduct. The laws pertaining to the breach of contract claims are uniform, and courts have regularly certified nationwide class actions for breach of

---

[27] Defendants' reliance on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) for the proposition that "each putative class member must independently possess Article III standing," misses the mark. Motion at 11. In *Ramirez*, the Court held that certain class members suffered no injury-in-fact and, thus, lacked standing under the Fair Credit Reporting Act because misleading information in their internal credit files was never provided to credit agencies or even to the class members themselves. *Ramirez*, 141 S. Ct. at 2209-12. *Ramirez* simply shuts the door on those plaintiffs who have not suffered a real-life injury in connection with a statutory violation. Here, Plaintiffs do not allege any statutory violation, and Plaintiffs have plausibly alleged that they and all putative class members have been harmed by the same misconduct engaged in by Defendants nationally.

contract.[28] Similarly, a nationwide class can be certified for the conspiracy claims because the laws pertaining to conspiracy contain the same traditional elements.[29]

      In support of their standing argument, Defendants rely on *In re Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG, 2019 WL 4478734, at *1 (E.D. Va. Sept. 18, 2019) and *Hassan v. Lenovo (United States), Inc.*, No. 5:18-CV-105-BO, 2019 WL 123002, at *2 (E.D.N.C. Jan. 7, 2019). However, these national and multi-state class actions are readily distinguishable from this case as they involve claims for violations of state statutes, including consumer protection statutes, which statutes differ from state to state. *Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at *11 (named plaintiffs asserted, *inter alia*, consumer protection claims against defendants under the laws of thirty-nine states, but resided in only four of the thirty-nine states, the court holding "at least one named class representative [must have] Article III standing to raise *each class subclaim*") (emphasis in original); *Hassan*, 2019 WL 123002 (national class action alleging claims under each state's respective consumer-protection statute).

---

[28] *See, e.g.*, *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 416 (N.D. Ill. 2012) (certifying nationwide class alleging breach of contract claim, and holding "[b]ecause Abercrombie made no effort to show that variations in state contract law would require that the claims of card holders in different States be resolved differently, the same result holds here"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying nationwide class alleging breach of contract claim in connection with insurance contract, and finding that "Conseco overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence"); *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007) ("As an initial matter, if the Court were to follow State Farm's argument, then nationwide or multi-state class action suits could never exist because of the variance in each state's substantive laws.").

[29] *Paradis v. Charleston Cty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774, 780 (2021), *reh'g denied* (Aug. 18, 2021) (finding that conspiracy under South Carolina law now contains "the traditional elements of a civil conspiracy claim as they have been similarly defined by the majority of jurisdictions").

Under the logic of Defendants' argument, namely, that "a plaintiff can only raise claims under her own State's laws - then no multi-state or nationwide class can ever be certified without a representative from each and every State in the proposed class." *Freeman v. MAM USA Corp.*, No. 1:20-cv-01834, 2021 WL 1103350, at *5 (N.D. Ill. Mar. 23, 2021). "The constitutional issue of standing should not be conflated with Rule 23 class action requirements. 'The relevant question ... is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do - but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is ... appropriately answered through the class certification process.'" *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011).[30]

Thus, the standing inquiry at this stage should be limited to only the named Plaintiffs, not putative class members. *Hutton v. Nat'l Board of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (the Article III standing analysis is "based on the allegations of personal injury made by the named plaintiffs."). Accordingly, the Court should reject Defendants' Article III standing argument, and it should deny Defendants' Motion.

## V.    Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy.

Defendants argue that Plaintiffs fail to state a claim for civil conspiracy because "Plaintiffs failed to plead overt acts in furtherance of the conspiracy separate and independent from other wrongful acts," contending that the alleged overt acts are "simply repetitious of their

---

[30] *See also Freeman*, 2021 WL 1103350, at *5 (whether plaintiff can represent a nationwide class pursuant to Rule 23 "is a question to be answered after discovery on the propriety of class certification - not right out of the box by an overbroad application of Article III standing to proposed class actions"); *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:12-CV-01297-DCN, 2012 WL 5384922, at *3 n.1 (D.S.C. Nov. 1, 2012) (rejecting defendant's challenge that plaintiff lacks standing to represent a putative nationwide class, and holding that "[a]t this stage, it is more appropriate to determine [the representative's] standing under Article III").

assertions that Defendants allegedly 'reduced' PIP claims based on a PPO Reason Code, a peer review, RF Reason Codes, and DOC Reason Codes." Motion at 13. Defendants ignore Plaintiffs' allegations pertaining to AIS, an unnamed co-conspirator, which are necessarily separate and independent from Plaintiffs' breach of contract and bad faith claims because AIS is not a party to the insurance contracts between Plaintiffs and Defendants.

Plaintiffs also plead AIS's improper use of a database maintained by the actuarial firm Milliman, Inc. (the "Milliman Database"), which is "comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by the U.S. Department of Health and Human Services/Centers for Medicare and Medicaid Services," and which "has no bearing on the reasonableness of charges for the medical services provided to USAA Group's insureds." ¶ 4. AIS's use of the outdated Milliman Database is a separate and independent act from Plaintiffs' breach of contract and bad faith allegations. Plaintiffs incorporate this allegation, as well as other allegations related to AIS, into their civil conspiracy claim. ¶ 166. *See James v. Pratt & Whitney*, 126 F. App'x 607, 613 (4th Cir. 2005) (finding that the plaintiff adequately asserted independent civil conspiracy allegations where the civil conspiracy cause of action incorporated prior allegations in the complaint).

Additionally, Plaintiffs' civil conspiracy claim alleges that Defendant USAA-Association "made an overt act in furtherance of the conspiracy by contracting with AIS on behalf of itself and all other Defendants for the express purpose of exercising the unlawful joint enterprise." ¶ 166. Defendant USAA-Association contracting with AIS is an overt act in furtherance of the civil conspiracy, but it is not related to the claims for bad faith and breach of contract – a contract to which AIS is not a party. These allegations regarding the coordination of colluding parties are sufficient to establish an additional act. *See McCrief v. Wachovia Bank*, No. 2:12-CV-72-RMG-

32

BHH, 2013 WL 841527, at *4 (D.S.C. Feb. 12, 2013), *report and recommendation adopted*, No. 2:12-72-RMO, 2013 WL 841570 (D.S.C. Mar. 6, 2013).

Accordingly, because Plaintiffs' conspiracy claim pleads overt acts in furtherance of the conspiracy separate and independent from other wrongful acts, the Court should deny Defendants' Motion.[31]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Dated: October 1, 2021

*/s/ C. Bradley Hutto*
C. Bradley Hutto, Esquire (S.C Bar #6436)
WILLIAMS & WILLIAMS
Post Office Box 1084
Orangeburg, SC 29116
Tel: (803) 534-5218
Fax: (803) 928-5190
Email: cbhutto@williamsattys.com


Franklin D. Azar (*pro hac vice*)
Michael D. Murphy (*pro hac vice*)
Brian Hanlin (*pro hac vice*)
Alexander F. Beale (*pro hac vice*)
Margeaux R. Azar (*pro hac vice*)
Franklin D. Azar & Associates, P.C.
14426 East Evans Avenue
Aurora, Colorado 80014
Phone Number: (303) 757-3300
Fax Number: (720) 213-5131
Email: azarf@fdazar.com
          murphym@fdazar.com

---

[31] Should the Court find that Plaintiffs have not sufficiently alleged overt acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the Amended Complaint, Plaintiffs respectfully request leave to amend to plead additional facts. *See Rauch v. Richland-Lexington Sch. Dist. 5*, No. 3:10-1154-MJP-PJG, 2010 WL 3950729, at *1 (D.S.C. Sept. 16, 2010), *report and recommendation adopted*, No. 10-1154, 2010 WL 3952024 (D.S.C. Oct. 6, 2010) (granting leave to amend civil conspiracy claim to assert additional factual allegations).

hanlinb@fdazar.com
bealea@fdazar.com
azarm@fdazar.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 1, 2021, the foregoing document was served on Defendants' counsel by the Court's electronic filing system.

*/s/ C. Bradley Hutto*
C. Bradley Hutto